FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
MAY 18 2005
JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JENNIFER WHITFIELD                                                              PLAINTIFF

v.                          4:04CV00592 SWW/JTR

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                         DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff, Jennifer Whitfield, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB"). Both parties have submitted Appeal Briefs, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). In *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005), the Court explained that, under the "substantial evidence on the record as a whole standard," the review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." However, the Court has also made it clear that a decision of the Commissioner should not be reversed merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

Plaintiff alleged disability[1] based on injury to her right knee. (Tr. 35.) After conducting

---

[1]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

an administrative hearing, the Administrative Law Judge[2] ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through March 9, 2004, the date of his decision. (Tr. 22.) On June 9, 2004, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, making it the final decision of the Commissioner. (Tr. 5-7.) Plaintiff then filed her Complaint initiating this action. (Docket entry #2.)

Plaintiff was 52 years old at the time of the hearing. (Tr. 30.) She had completed the eleventh grade in school, and later obtained her General Equivalency Diploma. *Id.* She has past relevant work as a coin collector and customer service technician/installer for a telephone company. (Tr. 13, 117-19.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2004). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, and the duration requirement is met, benefits are awarded. *Id.*

If claimant does not meet or equal a Listing, then a residual functional capacity ("RFC") assessment is made based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the

---

[2]The Hon. Mark S. Anderson.

impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset of disability (Tr. 21); (2) had "severe" impairments, including right knee meniscal tear, status post arthroscopic partial medial meniscectomy with abrasion of the trochlear groove and internal derangement of right knee, status post arthroscopy, subtotal medial posterior horn meniscectomy, anterior horn medical meniscectomy, joint debridement, chondroplasty of medial joint compartment, and chondroplasty of the patella *id.*; (3) did not have an impairment or combination of impairments that met or equaled a Listing *id.*; (4) was credible regarding her symptoms, limitations and restrictions only so far as supported by the medical evidence *id.*; (5) retained the RFC for a wide range of medium work *id.*; (6) was unable to perform any of her past relevant work *id.*; but (7) was able to perform other work. (Tr. 22.) Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

In reaching his conclusion, the ALJ correctly noted that, once Plaintiff was determined to be unable to perform her past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her RFC, age, education, and past work. (Tr. 19.) Based upon Plaintiff's vocational profile and her RFC, the ALJ concluded that Rules 203.23 and 203.24, Table No. 3, Appendix 2, Subpart P, Regulations No. 4 directed a finding of not disabled. (Tr. 22.) The ALJ also relied on the testimony of a vocational expert, who in response to a series of hypothetical questions stated that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations. (Tr. 21.)

In Plaintiff's Appeal Brief (docket entry # 10), she argues that the ALJ erred: (1) in not giving greater weight to the opinion of Dr. Chakales; (2) in rejecting the opinion of

Dr. Aukstuolis; and (3) in not further developing the record. The Court will analyze each of these arguments separately.

First, Plaintiff contends that the ALJ should have given greater weight to the findings of Dr. Chakales. (*Pltf's. App. Br.* at 20.) On October 3, 2001, Plaintiff received an injury to her right knee while on the job. (Tr. 87, 186.) Her treating physician ordered an MRI and referred her to Thomas S. Roberts, M.D., an orthopaedist. (Tr. 171.) Dr. Roberts treated her conservatively and allowed her to return to regular work duties in January of 2002. (Tr. 186-89.) She returned to him in March of 2002, complaining that the knee had become painful. (Tr. 185.) His impression was possible medial meniscal tear; he noted that her MRI was equivocal on this and thought it worthwhile to arthroscope her knee. *Id.* On April 5, 2002, he arthroscoped her knee and debrided two areas. (Tr. 160.) On April 10, 2002, he noted mild effusion.[3] (Tr. 184.) He restricted her to desk type work until her return in four weeks. *Id.* On June 17, 2002, he observed that she was doing "as well as could be." *Id.* Examination revealed full motion and no effusion. *Id.* He gave her permanent restrictions against climbing or squatting and limited the weight she should lift to 50 pounds. *Id.*

On August 12, 2002, Dr. Roberts completed a Medical Assessment of Ability to Do Work-Related Activities (Physical). (Tr. 179-80.) He restricted Plaintiff to lifting/carrying a maximum of 50 pounds occasionally and 25 pounds frequently; she had no standing/walking restrictions and could stand/walk eight hours in an eight-hour workday; her sitting was not restricted; she could occasionally climb, stoop, crouch, kneel and crawl and frequently balance; she had no restriction in reaching, handling, feeling, pushing/pulling, seeing, hearing and speaking; she had a restriction against frequent climbing, but no other environmental restrictions; and he expected her condition to occasionally cause moderate pain and frequently cause mild pain. *Id.*

On October 13, 2003, Plaintiff was seen by Harold H. Chakales, M.D., another

---

[3]The escape of fluid from the blood vessels or lymphatics into the tissues or a cavity. PDR MEDICAL DICTIONARY 570 (2d ed. 2000).

-4-

orthopaedist. (Tr. 214-15.) She complained of pain in the knee with an inability to stoop, squat, or bend. (Tr. 214.) Physical examination revealed that she walked with an antalgic gait.[4] *Id.* He recommended a repeat MRI. (Tr. 215.) In November of 2003, Dr. Chakales performed an arthroscopy for osteochondritis dissecans.[5] (Tr. 223.) On November 21, 2003, he observed that her knee was doing well and told her she could discontinue crutches. *Id.*

On December 12, 2003, Dr. Chakales completed a Medical Assessment of Ability to Do Work-Related Activities (Physical). (Tr. 216-17.) He restricted Plaintiff to lifting/carrying a maximum of 20 pounds occasionally and frequently; he indicated that she had standing/walking restrictions, but did not indicate how many hours in an eight-hour workday she could stand/walk; he indicated her sitting was restricted to one hour at a time and to four hours in an eight-hour workday; she could occasionally climb and balance, but never stoop, crouch, kneel, or crawl; she had no restriction in reaching, handling, feeling, seeing, hearing, and speaking; she was unable to push/pull; she had a restriction against heights, moving machinery, temperature extremes, humidity, vibration, and other (unspecified) environmental restrictions; and he expected her condition to occasionally and frequently cause moderate pain. *Id.* In February, 2004, he observed that her knee was doing well and she was "much better than she was previously." *Id.* He indicated that he wanted to see her again in three months (Tr. 223), but there is no indication in the record that she returned.

The ALJ considered the opinions of both Dr. Roberts and Dr. Chakales, but considered the restrictions by Dr. Chakales to be limited to the time that she was recovering from arthroscopic surgery. (Tr. 16.) That view was appropriate, since his Medical Assessment of Ability to Do Work-Related Activities (Physical) was completed approximately one month after surgery.

---

[4]A characteristic gait resulting from pain on weightbearing in which the stance phase of gait is shortened on the affected side. PDR MEDICAL DICTIONARY 722 (2d ed. 2000).

[5]Complete or incomplete separation of a portion of joint cartilage and underlying bone, usually involving the knee, associated with epiphyseal aseptic necrosis. *Id.* at 1282.

-5-

As the ALJ also noted (Tr. 15-16), Plaintiff was examined by Bruce L. Safman, M.D., in July of 2002. (Tr. 173-74.) Dr. Safman indicated that Plaintiff's pain was "significantly" improved, she had normal strength and full range of motion in her right knee, with no pain, swelling, or warmth; and she had no crepitance and her knee was stable. (Tr. 173.) He offered his opinion that occasional climbing would be okay, but kneeling and squatting were contraindicated. *Id.*

Plaintiff argues that Dr. Chakales based his opinion on an unequivocal MRI. (*Pltf's. App. Br.* at 20.) Dr. Roberts observed that Plaintiff's first MRI was equivocal, but that is one reason he thought that an arthroscopy was indicated. (Tr. 185.)

Plaintiff also argues that the ALJ rejected Dr. Chakales' opinion without any explanation of his reasoning. (*Pltf's. App. Br.* at 20.) Clearly, that is not the case. The ALJ discussed Dr. Chakales' restrictions. (Tr. 16.) In fact, he accepted them for the period of time immediately after Plaintiff's last surgery. *Id.*[6] Thus, the Court concludes that the ALJ gave proper weight to the opinion of Dr. Chakales.

Second, Plaintiff contends that the ALJ should not have rejected the psychiatric opinion of J. Aukstuolis, M.D., solely because he did not see her on the date he completed her Medical Assessment of Ability to Do Work-Related Activities (Mental). (*Pltf's. App. Br.* at 20-21.) According to the record, Dr. Aukstuolis saw Plaintiff five times from October of 2002 through July of 2003. (Tr. 200-02.) In November of 2003, he completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). (Tr. 205-06.) In 14 of the 16 categories on the form, he rated her ability to function as "Poor/None," defined on the form as "no useful ability to function in this area." *Id.* In the remaining two categories, he rated one "fair" and one "good." *Id.* In seeming contradiction, he judged that she was capable of managing benefits in her own best interest. (Tr. 206.)

The ALJ did not reject Dr. Aukstuolis' assessment solely because he did not see her at the

---

[6] Even if there were a conflict in the medical evidence, the trier of fact has the duty to resolve conflicting medical evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

AO 72A
(Rev.8/82)

time that he completed the assessment, as Plaintiff argues. The ALJ rejected the assessment because: (1) it was "entirely inconsistent" with the doctor's treatment notes; (2) there is no indication that the doctor examined her prior to completing the assessment; (3) the opinions offered were not supported by medical or clinical findings; and (4) the opinions were contradicted by Plaintiff's testimony and Plaintiff's statements to the doctor. (Tr. 19.) For example, the last three times that Plaintiff saw Dr. Aukstuolis, she was doing well. In January of 2003, she was in a good mood, stable, slept well, and had no complaints. (Tr. 201.) In March of 2003, she was stable on her medications, in a good mood, slept well, was alert and cognitively intact, and had no complaints. (Tr. 200.) In July, 2003, she reported that she slept well with Ambien, was in a good mood, cheerful, and coping well. *Id.* Thus, the Court concludes that the ALJ could properly reject the unsupported opinion of Dr. Aukstuolis set forth in the Medical Assessment of Ability to Do Work-Related Activities (Mental).

Finally, Plaintiff contends that the ALJ should have ordered consultative examinations if he doubted the opinions of Dr. Chakales and Dr. Aukstuolis. (*Pltf's. App. Br.* at 21.) As discussed earlier, the ALJ accepted the opinion of Dr. Chakales. The ALJ is permitted to issue a decision without obtaining additional evidence as long as the record is sufficient to make an informed decision. *E.g., Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Clearly, the ALJ had sufficient evidence upon which to make an informed decision.

The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's Complaint be dismissed, with prejudice.

DATED this 18th day of May, 2005.

UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
RICHARD SHEPPARD ARNOLD UNITED STATES COURTHOUSE
600 WEST CAPITOL AVENUE, ROOM 149
LITTLE ROCK, ARKANSAS 72201

**J. THOMAS RAY**
UNITED STATES MAGISTRATE JUDGE

(501) 604-5230
FAX# 604-5237

May 18, 2005

Mr. Alan J. Nussbaum
Nussbaum, Hendrix, Trussell & Cockrill, P. A.
P. O. Box 34117
Little Rock, AR 72203-4117

Ms. Stacey Elise McCord
Assistant United States Attorney
P. O. Box 1229
Little Rock, AR 72203-1229

    Re:    Jennifer Whitfield v. Commissioner, SSA
             Case No. 4:04CV00592 SWW/JTR

Dear Mr. Nussbaum and Ms. McCord:

    Enclosed is a copy of my Proposed Findings and Recommended Disposition in this case.

    The parties may file specific written objections to these Proposed Findings and Recommended Disposition, along with the factual or legal basis for the objections. An original and one copy of the objections must be filed with the Clerk of Court no later than eleven (11) days from the date of this letter, and a copy must be served on the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact. Even in the absence of objections, United States Chief District Judge Susan Webber Wright may reject the findings and recommendation in whole or in part.

                            Very truly yours,

                            J. Thomas Ray
                            United States Magistrate Judge

JTR/jjm
Enclosure

    cc:    The Honorable Susan Webber Wright, United States Chief District Judge
             File